Nathaniel K. Charny (NC 5664)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel -- (845) 876-7500
Fax -- (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Joanna Willis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNA WILLIS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MARQUIS HOME CARE, LLC and STEPHANY TEJADA in her professional and individual capacity,<br><br>　　　　　Defendants. | Civil Action No.<br><br>COMPLAINT<br><br>Jury Trial Demanded |

Plaintiff complains, upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows.

## INTRODUCTION

1.　　This action is brought by Plaintiff Joanna Willis (Plaintiff) against her former employers Defendant Marquis Home Care, LLC (Defendant MHC) and Stephany Tejada (Defendant Tejada) (collectively Defendants).

2.　　Plaintiff alleges that Defendants discriminated against her on the basis of her Race and National Origin (African American) and then unlawfully retaliated against Plaintiff in the terms and conditions of her employment for complaining about same, all in violation of Title VII

of The Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. Sections 2000e et seq. and New York Executive Law Sections 296 et seq.

3. Plaintiff additionally complains that Defendant MHC violated Federal and New York State wage and hour laws by failing to pay Plaintiff overtime compensation for hours worked over forty and violated New York's wage statement requirements.

## JURISDICTION AND VENUE

4. This is an action brought under Title VII, 42 U.S.C. Sections 2000e et seq. and New York Executive Law Section 296 et seq., as well as the Fair Labor Standards Act, 29 U.S.C. Sections 201 et seq.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343.

6. Because Plaintiff's state law claims arise out of the same case or controversy as her federal claim, this Court has supplemental jurisdiction over the state law claims by virtue of 28 U.S.C. Section 1367(a).

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Section 1391(b) because the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

8. Plaintiff Joanna Willis is an African American woman.

9. Plaintiff is a citizen and resident of the United States of America, who is, and at all times relevant hereto was, a resident of the County of Poughkeepsie, New York.

10. Defendant MHC is a New York Domestic Limited Liability Company whose principal place of business is located at 12 College Road, Monsey, New York, Rockland County, 10952.

11. Defendant MHC is a home care services agency licensed by the State if New York, which provides direct care services to individuals both in the home and/or in care facilities.

12. For all times relevant to this Complaint, Defendants have constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a gross annual volume of business done of not less than $500,000 and with employees engaged in commerce, as defined by 29 U.S.C. § 203(b).

13. For all times relevant to this Complaint Defendants have been an employer within the meaning of Article 6 of New York State Labor Law and its corresponding regulations, 12 NYCRR 142-2.2.

14. For all relevant times in this Complaint, Defendants employed more than fifteen persons.

15. Defendant Tejada is and was since November 2017 Defendant MHC's Director of Recruitment.

16. Defendant Tejada is Hispanic.

17. Defendant Tejada is and was responsible at all relevant times for managing Defendant MHC's team of "Recruiters," who in turn are responsible for seeking and hiring professionals to add to the Defendant MHC's pool of health care team members.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. On December 13, 2018 Plaintiff filed a charge of discrimination with the New York State Division of Human Rights (the DHR) and the Equal Employment Opportunity Commission (the EEOC).

19. After investigation by the DHR, on June 16, 2019 the DHR issued its findings and conclusions that there was probable cause that Plaintiff was discriminated against by the Defendants because of her Race and National Origin and retaliated against for complaining about same.

20. On or about August 9, 2019 Plaintiff submitted to the DHR a request to annul her election of State Law remedies and on September 20, 2019 the DHR granted the request and issued its notice closing the DHR case and releasing it for the instant litigation.

21. On October 15, 2019, on Plaintiff's request, the EEOC issued a Notice of Right to Sue.

22. The instant action is commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

23. Plaintiff has exhausted her administrative remedies.

## ALLEGATIONS

24. Plaintiff began employment with Defendants in or about May 22, 2017 as a Recruiter.

25. Recruiters are responsible for obtaining and on-boarding applicants to serve as Aides for Defendant MHC.

26. In or about September 2017 Defendant Tejada began employment with Defendant MHC as a Recruiter.

27. In or about November 2017 Defendant Tejada was promoted to the position Director of Recruitment.

28. The new Recruiters hired once Defendant Tejada was promoted to Director were almost entirely not Black.

29. Since being promoted to the Director position, Defendant Tejada has treated Plaintiff and the other Black Recruiters in an adverse and hostile fashion as compared to the non-Black Recruiters.

30. Defendant Tejada repeatedly, openly and apparently made racist remarks at and about the Black Recruiters, including Plaintiff.

31. Defendant Tejada referred to Plaintiff and the other African American Recruiters as "rachet sisters" and "ghetto sisters."

32. Defendant Tejada routinely and openly referred to the Black Recruiters as "THOT," a which is "ghetto vernacular" for "those whores out there."

33. Defendant Tejada would routinely and openly mock the Black Recruiters and impersonate them as coming from the ghetto. Defendant Tejada's public impersonation of the Black Recruiters was openly racist.

34. On several occasions, Defendant Tejada referred to Plaintiff as "an animal" and told another coworker that Plaintiff was "acting like an animal."

35. Defendant Tejada made statements about her desire to have an entire recruitment team that was bilingual in Spanish and English.

36. Defendant Tejada made statements such as "well those are the challenges y'all face because you are not bilingual," an explicit reference to her preference for Hispanic staff members.

37. Defendant Tejada would frequently discuss how efficient a bilingual team would be and that having a bilingual team was Defendant Tejada's goal.

38. Defendant Tejada forced Plaintiff to hand over all Spanish-speaking Aides to Defendant Tejada for distribution to Defendant Tejada's preferred Hispanic staff members.

39. Defendant Tejada made Plaintiff and the only other Black Recruiter left at the work site to stop accepting walk-in applications at Plaintiff's work site.  This adverse action resulted in Plaintiff having lower monthly numbers.

40. Since becoming Director, Defendant Tejada has openly and apparently given the non-Black Recruiters preferential treatment when compared to the Black Recruiters.  Such preferential treatment includes taking the Hispanic Recruiters to special events, allowing the Hispanic Recruiters to have extra days off for the weekends worked, giving the Hispanic Recruiters extra hours, allowing the Hispanic Recruiters to charge for travel mileage, allowing the Hispanic Recruiters to train new staff, and grading the Hispanic Recruiters in a preferential manner; all in contrast to the hostile treatment imposed by Defendant Tejada on the Black Recruiters.

41. Defendant Tejada would not allow Black Recruiters to maintain Spanish-speaking clients, requiring Black Recruiters to transfer those clients to Defendant Tejada.

42. Before Defendant Tejada's tenure as Director, Black Recruiters were allowed to and routinely maintained Spanish speaking clients and facilitated communication with said clients via texts, applications and interpreters.

43. Defendant Tejada allowed Black Recruiters to keep other foreign language clients, insisting only that Spanish speaking clients be referred to Defendant Tejada.

44. On March 22, 2018 and again on April 20, 2018, Plaintiff complained to Casey Derzorett, the Director of Human Resources and CFO Gregg Rosen that Defendant Tejada created a toxic and hostile work environment based on race and national origin, including explaining the events discussed above.

45. At both of these meetings Plaintiff was advised by Derzorett and Rosen that Defendant Tejada was "not going anywhere."

46. On or about April 27, 2018, Plaintiff met with Derzorette and Rosen, along with Defendant Tejada, regarding Defendant Tejada's discriminatory conduct.

47. During the April 27, 2018 meeting Defendant Tejada stated that if any of the African American staff had reported her for her racist behavior, then Defendant Tejada would report them because she is Hispanic and they are Black. Two high ranking corporate officers were present when Defendant Tejada made this comment.

48. Defendant MHC conducted no investigation of any sort into the complaints made by Plaintiff during those two meetings.

49. Plaintiff was retaliated against for making the complaints insofar as Plaintiff was immediately thereafter given additional duties at one of Defendants' Satellite Offices (Manor at Woodside), which required in addition to recruiting, also coordinating (matching an Aide to a case) which is extremely time consuming and requires careful attention.

50. For the period April through December 2018 Plaintiff performed the extra assignments. Plaintiff worked an extra 6 hours per week, or 46 hours per week.

51. Instead of being paid at overtime rate for the extra six hours, Plaintiff was paid straight time for the extra six hours per week.

52. Defendants wage statements failed to accurately report her overtime hours worked, instead reporting the hours as straight time.

53. Soon after filing her complaint with the DHR and EEOC, in or about January 2019, Plaintiff was summoned to a meeting with Derzorett and Rosen at which time Rosen said that he was "not sure what [Plaintiff] was looking to get out of [the DHR complaint]." Rosen additionally stated that because of Plaintiff's complaint filed with the DHR, "this could get ugly."

54. That day, soon after the meeting, Plaintiff was transferred to a Marketing Representative position and was paid a salary instead of an hourly wage.

55. While no longer directly reporting to Defendant Tejada, Plaintiff was still obligated and in fact did continue to be engaged with Defendant Tejada because (i) the two departments (Outreach and Recruitment) are intertwined and (ii) Defendant Tejada ran the bi-weekly meeting of the two departments.

56. Plaintiff did not request the transfer; it was imposed upon her.

57. Defendants conducted no investigation of any sort into the allegations made in the DHR complaint.

58. Defendant Tejada's racist conduct and racist comments continued unabated after Plaintiff complained to upper management.

59. In addition, Plaintiff was subject to specific retaliatory treatment.

60. For example, Defendant Tejada left Plaintiff off the minutes of conference calls, left clients off of Plaintiff's reports, and instructed a new hire to recruit individuals in Plaintiff's excusive territory.

61. After Plaintiff complained about Defendant Tejada's discriminatory conduct, Plaintiff was given more duties to perform without an increase in pay.

62. After Plaintiff complained about Defendant Tejada's discriminatory conduct, Defendant Tejada began conspicuously following Plaintiff around the office and into closed areas such as the promotion closet and various workstations in the corporate office, all in an obvious attempt to intimidate Plaintiff by picayune monitoring and investigation.

63. After Plaintiff complained about Defendant Tejada's discriminatory conduct, Defendant Tejada began refusing to issue Plaintiff necessary paperwork, such as refusing to issue Plaintiff wage agreements.

64. At the time Tejada was hired by Defendant MHC, four out of the five Recruiters were Black.

65. As of the date of Plaintiff's constructive discharge, all of the Black Recruiters had quit because of the unbearable nature of Defendant Tejada's racist behavior and Defendants' failure to make any efforts to stop the violative conduct.

66. On or about December 29, 2019, things had become unbearable for Plaintiff and Defendants' hostile work environment based on race and national origin made it such that any reasonable person would have considered themselves terminated from employment with the Defendants.

67. Plaintiff, like the other Black Recruiters before her, submitted her resignation.

68. To date, Defendants have failed to remit to Plaintiff payment for her accrued but unused vacation time.

FIRST CAUSE OF ACTION

DISCRIMINATION ON THE BASIS OF RACE AND
NATIONAL ORIGIN IN VIOLATION OF TITLE VII, 42 U.S.C. §§ 2000e et seq.

69. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

70. Plaintiff is a member of a protected class because she is African American (Black).

71. Plaintiff was qualified for employment in the position of Recruiter.

72. Defendants subjected Plaintiff to intentional discrimination, harassment and a hostile work environment because of her Race and/or National Origin.

73. The reasons Defendants gave Plaintiff for its adverse employment actions against Plaintiff are pretexts for intentional discrimination and animus.

74. All the foregoing actions were taken by Defendants in order to deprive Plaintiff of employment and other opportunities on account of her Race and National Origin.

75. Because of the willful and deliberate actions of Defendants, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

76. By reason of the foregoing, Plaintiff has suffered, and will continue to suffer, emotional harm including pain and suffering, mental anguish, emotional distress, injury to reputation, and humiliation.

77. In addition, Plaintiff has suffered and will continue to suffer loss of earnings and other employment benefits and job opportunities.

78. Plaintiff is entitled to actual, compensatory, equitable and punitive damages, as well as attorneys fees and costs.

SECOND CAUSE OF ACTION

DISCRIMINATION ON THE BASIS OF RACE AND
NATIONAL ORIGIN IN VIOLATION OF N.Y. EXEC. LAW § 296 et seq.

79. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

80. Plaintiff is a member of a protected class because she is African American (Black).

81. Plaintiff was qualified for employment in the position of Recruiter.

82. Defendants subjected Plaintiff to intentional discrimination, harassment and a hostile work environment because of Plaintiffs Race and/or National Origin.

83. The reasons Defendants gave Plaintiff for its adverse employment actions against Plaintiff are pretexts for intentional discrimination and animus.

84. All the foregoing actions were taken by Defendants in order to deprive Plaintiff of employment and other opportunities on account of her Race and National Origin.

85. Because of the willful and deliberate actions of Defendants, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of New York State Executive Law.

86. By reason of the foregoing, Plaintiff has suffered, and will continue to suffer, emotional harm including pain and suffering, mental anguish, emotional distress, injury to reputation, and humiliation.

87. In addition, Plaintiff has suffered and will continue to suffer loss of earnings and other employment benefits and job opportunities.

88. Plaintiff is entitled to actual, compensatory, equitable and punitive damages, as well as attorneys fees and costs.

THIRD CAUSE OF ACTION

RETALIATION UNDER TITLE VII, 42 U.S.C. §§ 2000e et seq.

89. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

90. All the various actions taken by Defendants against Plaintiff subsequent to when she complained of Defendants' discriminatory conduct constitute unlawful retaliation in violation of Title VII, 42 U.S.C. §§ 2000e et seq.

91. Because of the willful and deliberate actions of Defendants, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

92. By reason of the foregoing, Plaintiff has suffered, and will continue to suffer, emotional harm including pain and suffering, mental anguish, emotional distress, injury to reputation, and humiliation.

93. In addition, Plaintiff has suffered and will continue to suffer loss of earnings and other employment benefits and job opportunities.

94. Plaintiff is entitled to actual, compensatory, equitable and punitive damages, as well as attorneys fees and costs.

FOURTH CAUSE OF ACTION

RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296 et seq.

95. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

96. All the various actions taken by Defendants against Plaintiff subsequent to when she complained of Defendants' discriminatory conduct constitute unlawful retaliation in violation of N.Y. Exec. Law §296 et seq.

97. By reason of the foregoing, Plaintiff has suffered, and will continue to suffer, emotional harm including pain and suffering, mental anguish, emotional distress, injury to reputation, and humiliation.

98. In addition, Plaintiff has suffered and will continue to suffer loss of earnings and other employment benefits and job opportunities.

99. Plaintiff is entitled to actual, general and compensatory damages, such amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA

100. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

101. For the period April through December 2018 Plaintiff routinely worked at least forty-six hours per week and received no overtime compensation as required by the FLSA.

102. Defendants' failure to pay overtime wages to Plaintiff was willful as defined by the FLSA.

103. As a consequence of the willful underpayment of wages, Plaintiff has incurred damages and Defendants are indebted to Plaintiff in the amount of the unpaid overtime compensation, together with interest, liquidated damages and attorneys fees and costs.

## SIXTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER STATE LAW

104. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

105. For the period April through December 2018 Plaintiff routinely worked at least forty-six hours per week and received no overtime compensation as required by the New York Labor Law.

106. As a consequence of the willful underpayment of wages, Plaintiff has incurred damages and Defendants are indebted to Plaintiff in the amount of the unpaid overtime compensation, together with interest, liquidated damages and attorneys fees and costs.

### SEVENTH CAUSE OF ACTION

### FAILURE TO COMPLY WITH WAGE STATEMENT REQUIREMENTS

107. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

108. Defendants failed to provide Plaintiff with an accurate mandatory wage notice with each paycheck in violation of New York Labor Law Section 195(3).

109. Plaintiff is entitled to statutory damages for each day of said violation.

### EIGHTH CAUSE OF ACTION

### FAILURE TO PAY ACCRUED BUT UNUSED OVERTIME

110. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

111. At the time of her constructive discharge from employment Plaintiff had accrued but unused vacation time.

112. Defendants have no published policy that speaks to the loss of accrued but unused vacation upon separation of employment.

113. Plaintiff's failure to pay out the accrued but unused vacation time is a violation of New York Labor Law.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

(i)     Actual damages;

(ii)    Compensatory damages;

(iii)   Punitive damages;

(iv)    The unpaid overtime with liquidated damages;

(v)     The unpaid accrued by unused vacation time with liquidated damages;

(vi)    Statutory damages for the inaccurate wage statements;

(vii)   Attorneys fees and costs;

(viii)  Pre- and Post-judgment interest; and

(ix)    Such other relief as the Court deems appropriate.

JURY DEMAND

Plaintiff requests a trial by jury.

Dated: Rhinebeck, New York
       January 10, 2019

*Nathaniel K Charny*
_____
Nathaniel K. Charny (NC 5664)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
(845) 876-7500
rwheeler@charnywheeler.com

Attorneys for Plaintiff Joanna Willis